**STATE of Minnesota, Appellant/Cross–Respondent,**

v.

**Taylor James PASS, Respondent/Cross–Appellant.**

No. A12–0635.

Supreme Court of Minnesota.

June 26, 2013.

**838**

Lori Swanson, Attorney General, Saint Paul, MN; and James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Chief Deputy Dakota County Attorney, Hastings, MN, for appellant/cross-respondent.

Mark D. Nyvold, Special Assistant State Public Defender, Fridley, MN, for respondent/cross-appellant.

OPINION

STRAS, Justice.

A jury acquitted respondent/cross-appellant Taylor James Pass of two counts of second-degree murder for the stabbing death of Tina San Roman, but deadlocked on two other counts for the stabbing of a second victim, O.A.R. In preparation for a retrial on the unresolved counts, the district court excluded the State's evidence related to San Roman's death, concluding that the evidence would substantially prejudice Pass, confuse the issues, and mislead the jury. The court also granted Pass's motion to dismiss the remaining counts on the ground that exclusion of Pass's alternative-perpetrator evidence related to San Roman's death would violate Pass's due process right to present a complete defense. The court of appeals affirmed the district court's decision. We reverse and remand to the district court for further proceedings.

I.

The State charged Pass by criminal complaint for his alleged role in an incident that occurred on April 7, 2009, in the garage of San Roman's home. The State alleged in the complaint that Pass killed San Roman by stabbing her in the abdomen, and then attacked O.A.R. with a knife when O.A.R. attempted to assist San Roman. The complaint charged Pass with two counts of second-degree murder for San Roman's death and both second-degree assault and attempted second-degree murder for the attack on O.A.R.

At Pass's trial, the State presented O.A.R.'s testimony, which established the following facts. On the evening of April 7, O.A.R. saw San Roman lying on the floor in the garage with Pass standing over her. Pass told O.A.R. that San Roman had stopped breathing and needed assistance. When O.A.R. attempted to assist San Roman, Pass cut his neck with a knife. Pass stabbed O.A.R. a second time in the back while the two of them struggled. Pass eventually fled from the residence, after which O.A.R. called 911. Before medical personnel transported him to the hospital, O.A.R. identified Pass as the person who attacked him and gave the police a description of the vehicle in which Pass fled the scene.

A short time later, the police stopped Pass's vehicle. During the stop, the arresting officer noticed blood on Pass's clothing, forearm, face, and hands. The blood on Pass's clothing and skin matched O.A.R.'s DNA profile and some of the blood on Pass's pants matched San Roman's DNA profile. The police also searched San Roman's residence, where they observed bloodstains on the driveway and recovered two knives from the garage floor. The blood collected from the driveway matched Pass's DNA profile.

The jury found Pass not guilty of the two counts of second-degree murder, but deadlocked on the assault and attempted murder counts that related to the attack on O.A.R. In preparation for a retrial on the unresolved counts, the State moved to admit evidence connected to San Roman's injuries and death in order to demonstrate Pass's motive for attacking O.A.R. The district court concluded, however, that such evidence would be inadmissible under *State v. Wakefield,* 278 N.W.2d 307 (Minn. 1979), because the jury had acquitted Pass of the offenses related to San Roman's death. Pass then moved to dismiss the remaining counts. The court denied Pass's motion, concluding that "the exclusion of the acquitted-crimes evidence [would] not significantly reduce the likelihood of a successful prosecution in light of all the other admissible evidence available to the State." The State filed a pretrial appeal from the district court's evidentiary ruling. As relevant here, the court of appeals remanded with instructions for the district court to consider whether any of the evidence related to San Roman's death was admissible as immediate-episode evidence. *State v. Pass,* No. A10–1134, 2011 WL 1236143, at \*4–5 (Minn.App. Apr. 5, 2011).

On remand, the State limited the scope of the evidence it intended to offer at Pass's retrial. More specifically, the State proffered evidence that: (1) O.A.R. opened the garage door and observed San Roman lying on her back with Pass standing over her; (2) Pass told O.A.R. to help him because San Roman had stopped breathing; and (3) as O.A.R. attempted to assist San Roman, Pass attacked him with a knife. Pass also informed the district court that he intended to present evidence related to San Roman's stabbing and death in order to establish an alternative-perpetrator defense. The evidence proffered by Pass included O.A.R.'s unredacted prior statements and testimony, and DNA evidence recovered from San Roman's residence and from under San Roman's fingernails. Pass then moved to dismiss the remaining counts on due process grounds. He argued that none of the evidence *he* proffered was admissible because it would be unduly prejudicial, confuse the issues, and mislead the jury. Pass argued that, if the court agreed that his alternative-perpetrator evidence was inadmissible, then its exclusion would violate his due process right to present a complete defense.

The district court excluded all of the proffered evidence related to San Roman's death because "[w]hether the evidence [would be] limited as offered by the State or unlimited as offered by [the] Defendant," it would confuse the issues, mislead the jury, and substantially prejudice Pass. The court further concluded that the exclusion of Pass's alternative-perpetrator evidence would violate Pass's "constitutional due process right to present a complete and meaningful defense." The court explained that Pass could not present his alternative-perpetrator defense without using evidence related to San Roman's death and, therefore, "[w]hether all, some or none of the evidence is admitted, [Pass] will be unduly prejudiced and his right to a fair trial will be eviscerated." The court of

appeals affirmed. *State v. Pass*, No. A12–0635, 2012 WL 3641369, at *3 (Minn.App. Aug. 27, 2012).

## II.

■ The first question presented by this case is whether the State may appeal the district court's dismissal of the charges without violating Pass's double jeopardy rights. Both "the United States and Minnesota Constitutions protect a criminal defendant from a second prosecution for the same offense after an acquittal on the merits." *State v. Large*, 607 N.W.2d 774, 778 (Minn.2000) (footnote omitted) (citing U.S. Const. amend. V; Minn. Const. art. I, § 7). Once an acquittal occurs, the prosecution is over and the State loses its right to appeal, even if the dismissal of the charges rests on an error of law. *Id.* at 779. However, if a dismissal does not constitute an "acquittal on the merits," then the State does not lose its right to appeal because a subsequent prosecution would not violate a criminal defendant's double jeopardy rights. *See id.*

■ A district court's decision constitutes an "acquittal on the merits when 'the ruling of the judge, whatever its label, actually represents a resolution [in defendant's favor], correct or not, of some or all of the factual elements of the offenses charged.'" *Id.* (alteration in original) (quoting *United States v. Scott*, 437 U.S. 82, 97, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). "[W]e consider both the form and the substance of the [district] court's ruling" when determining whether it constitutes "a resolution in the defendant's favor of some or all of the factual elements of the offense charged." *State v. Sahr*, 812 N.W.2d 83, 90 (Minn.2012). When a district court finds that there is insufficient evidence on one or more elements of a criminal offense, then the court has acquitted the defendant of that offense "because

such a finding involves a factual determination about the defendant's guilt or innocence." *Id.* (citing *Sanabria v. United States*, 437 U.S. 54, 59, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)).

■ In its order prior to the first appeal (the "June 2010 order"), the district court denied Pass's motion to dismiss because it concluded that there was sufficient admissible evidence for the State to proceed with its prosecution on the unresolved counts. The court explained:

> [T]he exclusion of the acquitted-crimes evidence will not significantly reduce the likelihood of a successful prosecution in light of all the other admissible evidence available to the State. The excluded evidence does not lend proof to any elements of the charged crimes and is not required in order to sustain convictions.... Substantial admissible evidence remains available to the State to successfully prosecute its case without reference to the acquitted offenses [related to San Roman's death].

In its order following remand from the court of appeals (the "April 2012 order"), the district court dismissed the complaint because the exclusion of alternative-perpetrator evidence related to San Roman's injuries and death would violate Pass's due process right to present a complete defense. Nothing in the April 2012 order suggests that the court based its decision to dismiss the complaint on a factual determination about Pass's guilt or innocence. *See Sahr*, 812 N.W.2d at 90. To the contrary, the court based its decision on its legal conclusion that "[w]hether all, some or none of the evidence is admitted, [Pass] will be unduly prejudiced and his right to a fair trial will be eviscerated."

Indeed, the Supreme Court of the United States has explained that a defendant "suffers no injury cognizable under the Double Jeopardy Clause" if the State ap-

peals a ruling in favor of the defendant when the defendant "deliberately cho[se] to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence" of the charged offenses. *Scott*, 437 U.S. at 98–99, 98 S.Ct. 2187; *accord Large*, 607 N.W.2d at 779. Pass's February 2012 motion to dismiss relied solely on due process grounds—a basis unrelated to factual guilt or innocence.

■ Pass concedes that he did not seek dismissal based on his factual innocence, but he asserts that a criminal defendant does not necessarily have to seek an acquittal in order to obtain one. While Pass is correct that a court can acquit a defendant without being asked to do so, he cannot point to any cases in which we have equated a dismissal unrelated to a defendant's factual innocence with an acquittal. He relies heavily on *State v. Gurske*, but the district court in that case dismissed the criminal charges "[b]ased upon the evidence presented" and its conclusion that a reasonable jury could not find Gurske guilty of the charge against him beyond a reasonable doubt. 395 N.W.2d 353, 356 (Minn.1986). The circumstances in *Gurske* are not present here.

Pass also argues that the district court's April 2012 order dismissed the case against him on two grounds: one relating to Pass's due process right to present a complete defense and the other "implicitly, on the post-exclusion insufficiency of the evidence to convict." The latter ground, however, finds no support in either the court's June 2010 order or its April 2012 order. In fact, the court explicitly concluded to the contrary in its June 2010 order when it stated that exclusion of the evidence related to San Roman's injuries and death would "not significantly reduce the likelihood of a successful prosecution."

Nothing in the April 2012 order suggests that the court reconsidered its earlier assessment of the sufficiency of the evidence, implicitly or otherwise. Nor is there any basis to conclude that the court's April 2012 order excluded any additional evidence proffered by the State that might have caused the court subsequently to change its mind about the sufficiency of the evidence. Indeed, the only additional evidence excluded by the court in its April 2012 order was alternative-perpetrator evidence *offered by Pass*. The court's exclusion of *that* evidence—as opposed to its exclusion of the State's evidence related to San Roman's injuries and death—ultimately led the court to conclude that a trial on the charges would deprive Pass of his due process right to present a complete defense.

Accordingly, we conclude that the State may appeal the district court's April 2012 order dismissing the case without violating Pass's double jeopardy rights.

### III.

■ The second question presented by this case is whether the district court erred when it dismissed the charges based on its conclusion that the exclusion of Pass's alternative-perpetrator evidence would violate Pass's due process right to present a complete defense. The Due Process Clauses of the United States and Minnesota Constitutions protect a criminal defendant's right to a meaningful opportunity to present a complete defense, including the ability to present evidence suggesting that another individual committed the charged offense. *State v. Jenkins*, 782 N.W.2d 211, 225–26 (Minn.2010); *see also* U.S. Const. amend. XIV; Minn. Const. art. I, § 7.[1] However, a defendant's due process right to present a complete defense

---

1. "The due process protection provided under the Minnesota Constitution is identical to the

due proces[s] guaranteed under the Constitution of the United States." *State v. Krause,*

yields to the application of an evidentiary rule unless the rule "infringe[s] upon a weighty interest of the accused and [is] arbitrary or disproportionate to the purposes [the rule is] designed to serve." *Holmes v. South Carolina,* 547 U.S. 319, 324–25, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (citation omitted) (internal quotation marks omitted). Put differently, the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Id.* at 326, 126 S.Ct. 1727.

In its April 2012 order, the district court did not specifically identify an evidentiary rule when it excluded Pass's alternative-perpetrator evidence. Nonetheless, the court's reasoning is instructive. The overriding concerns for the court were that the evidence would be "overwhelming[ly] prejudicial" to Pass, "confuse and mislead the jury," and persuade the jury to convict Pass based upon a misperception that Pass had "got[ten] away with" murder based on the prior verdict.[2] Those concerns are the hallmarks of the balancing inquiry under Minn. R. Evid. 403, which permits courts to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," among other considerations.

After engaging in the balancing inquiry of Rule 403, the district court concluded that the exclusion of Pass's alternative-perpetrator evidence would violate Pass's due process right to present a complete defense. However, neither the district court nor the court of appeals engaged in the additional analysis, required by *Holmes,* of determining whether the application of Rule 403 in this case infringed upon a weighty interest of the accused and is arbitrary or disproportionate to the ends that the rule is designed to promote. 547 U.S. at 324–25, 126 S.Ct. 1727.

■ Once properly framed, *Holmes* itself answers the constitutional question. As the Supreme Court explained:

> [W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' "

*Id.* at 326–27, 126 S.Ct. 1727 (citations omitted). Put more succinctly, evidentiary rules designed to permit the exclusion of unfairly prejudicial, confusing, or misleading evidence are "unquestionably constitutional." *Montana v. Egelhoff,* 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion).

■ For purposes of the constitutional analysis, it makes little difference that the evidence excluded by the district court suggests that another individual committed the charged crimes. As an example of

---

817 N.W.2d 136, 144 (Minn.2012) (alteration in original) (citation omitted) (internal quotation marks omitted).

**2.** Although the district court explained *why* it excluded Pass's evidence, it is less clear *what* evidence the court actually excluded in its April 2012 order. The court cryptically refers to the evidence that "must be excluded" as "the evidence related to the unsolved murder" of San Roman. Yet at other points in the order, the court discusses evidence seemingly unconnected to San Roman's murder without stating whether that evidence is excluded. While the order's ambiguity does not alter our conclusion that the court's evidentiary ruling complies with due process, the court may wish to clarify the scope of its April 2012 order on remand to provide guidance to the parties.

a "widely accepted" evidentiary rule, *Holmes* cited our opinion in *State v. Jones,* 678 N.W.2d 1 (Minn.2004). *Holmes,* 547 U.S. at 327 & n. *, 126 S.Ct. 1727 (citing *Jones,* 678 N.W.2d at 16–17). *Jones* addressed Minnesota's foundational requirement that alternative-perpetrator evidence is admissible only if the defendant connects the alternative perpetrator to the charged offense. 678 N.W.2d at 16–17. We later relied on *Holmes* when we rejected a due process challenge to that same foundational requirement. *Jenkins,* 782 N.W.2d at 226. Taken together, *Holmes* and *Jenkins* establish that courts may exclude evidence suggesting that another individual committed the charged offenses without violating a defendant's due process right to present a complete defense. Although the district court relied on a different evidentiary rule to exclude the alternative-perpetrator evidence in this case, the result is the same as in *Jenkins:* the court's evidentiary ruling did not violate Pass's due process rights.[3]

## IV.

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

**3.** In light of our conclusion that application of Rule 403 in this case was neither arbitrary nor disproportionate to the ends that the rule is designed to promote, we do not address any of the other arguments made by the parties, including whether there was sufficient "state action" in this case to support a constitutional violation. Moreover, because the district court *excluded* the evidence related to San Roman's injuries and death, we express no opinion about whether *admission* of that evidence would violate Pass's due process right to a fair trial.